# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Goitom Tedla,

        Plaintiff,

                              **Memorandum of Law and Order**

v.                              Civil File No. 04-3745 (MJD/SRN)

John E. Potter, Postmaster
General of the United States Postal
Service, and the United States
Postal Service,

        Defendants.

Goitom Tedla, pro se.

Friedrich A. P. Siekert, Assistant U.S. Attorney, Counsel for Defendants.

## I.    INTRODUCTION

This matter is before the court on Defendants' motion for Summary

Judgment [Docket No. 16].  This is an action for unlawful discrimination on the

basis of national origin and race, reprisal and breach of contract.  The Court heard

oral arguments on May 3, 2006.

## II.    FACTUAL BACKGROUND

Plaintiff, Goitom Tedla,  ("Tedla") was born in Eritrea and is black.  Tedla

immigrated to the United States from Sudan in September 1989.

**A.      Tedla's USPS Employment History**

Defendants, Postmaster General of the U.S. Postal Service John E. Potter ("Potter") and the United States Postal Service ("USPS") hired Tedla in 1998 as a temporary, or as the USPS describes it, "casual" clerk.  Tedla passed two postal service entrance exams to qualify for employment.  Potter reappointed Tedla for four consecutive ninety-day periods as a casual clerk, from June 30, 1998 to June 30, 1999.  Later that year, Potter offered Tedla a holiday reappointment, which Tedla declined.

In May 2000, Potter reappointed Tedla for two consecutive ninety-day periods as a casual clerk which expired in August 2000.  The August 3, 2000 reappointment request contains a comment by Tedla's supervisor that he was an excellent worker.  After successfully completing these appointments, Potter offered Tedla an opportunity to be promoted to a distribution clerk.  However, Tedla declined the offer as he was planning to visit Africa.  After Tedla's return from Africa, Potter appointed Tedla for one ninety-day period, beginning in December 2001.

**B.      Tedla's Casual Carrier Appointment**

In June 2002, Potter appointed Tedla to the ninety-day city casual carrier position in controversy.  Unlike his previous appointments, this position entailed delivering mail.  Tedla received five days of general driver and carrier training.

2

Then, Tedla shadowed three permanent carriers for four days at the Elway Post Office before he was assigned to deliver mail unaccompanied.

From July 1, 2002 through August 3, 2002, Tedla delivered mail on twelve to nineteen different routes.  Tedla was never assigned to deliver mail on the three routes he was trained on and was never trained to sort unsorted mail, instead receiving the mail pre-sorted.

### 1.    Tedla's Job Performance

Tedla was a punctual, prompt and courteous employee.  However, he required 208.5 hours to complete approximately 133.5 hours of carrying.  (EEO Rep. 26.)  Supervisor Diane Reuss reported that she had to send him help daily, have other carriers re-case and deliver Tedla's assigned mail, and speak with him frequently regarding areas of his performance that needed improvement.  (EEO Rep. 20.)  Other supervisors talked to Tedla about separate compliance issues Tedla had, including failure to scan mail properly and parking mistakes.  (EEO Rep. 18, 21, 15.)

### 2.    Tedla's Discharge

On August 2, 2002, Tedla was assigned two different delivery routes.  He delivered the first route as usual.  However, the mail for his second route was unbundled and not organized.  Tedla requested assistance, but no one came so he returned to the postal station to explain the situation to his supervisor.  He

delivered as much as he could and returned the undelivered mail at the end of the day.

On August 3, 2002, supervisors Karen Smith and Diane Reuss terminated Tedla for his low performance the previous day.  At that time, Tedla did not receive written notice of his termination.

Tedla returned to the Elway Postal Station on August 6, 2002 to speak with General Manager Richard Hanly.  Hanly discussed the issue with Tedla's supervisors.  After inquiring whether Tedla had been given reasonable expectations and feedback, Hanly approved the termination, but suggested Tedla be given another chance.  (EEO Rep. 26, 15.)

Hanly offered to recommend Tedla for other postal positions.  (Tedla Dep. I 43; EEO Rep. 15.)  Human resources offered Tedla a mail handler position, which he refused.  (EEO Rep. 25; Tedla Dep. I 43.)  Tedla received a letter dated August 12, 2002 signed by Smith and Hanly providing the terms of Tedla's August 9, 2002 termination.

Tedla contacted an EEO counselor on August 16, 2002, complaining of race discrimination.  He filed a complaint of discrimination on September 28, 2002, alleging that Defendants discriminated against him when he was terminated from his position as a mail carrier.  A final agency decision ("FAD") dismissing Tedla's complaint was issued on March 5, 2004.  Tedla's complaint was dismissed because "he failed to submit evidence which would permit a trier of fact to find by

a preponderance of the evidence that the Agency discriminated against him based on race." (Tedla Dep. I, Ex. 11.)

Later, after interviewing for another job at the USPS in April 2004, Tedla received a letter dated April 13, 2004 stating that he would not be considered for further employment with the USPS because of his unsatisfactory performance termination.

Tedla appealed the FAD to the EEOC Office of Federal Operations ("OFO"). The EEOC affirmed the FAD on June 29, 2004. Tedla filed the present civil action on August 10, 2004, within the required 90 days of the EEOC decision.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Id. at 323. "[S]ummary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998). Because discrimination cases often turn on inferences rather than direct evidence, we are particularly deferential to the nonmovant. Crawford v. Runyon, 37 F.3d 1338,

1341 (8th Cir. 1994).  Notwithstanding these considerations, "summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case."  Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997).

### B.    Race and/or National Origin Discrimination

Because Tedla presented no direct evidence of discrimination, his discrimination claims are analyzed under the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  A plaintiff must first establish a prima facie case of discrimination.  If a plaintiff establishes the prima facie case, then the employer must articulate a legitimate, nondiscriminatory reason for its actions.  Finally, the burden shifts back to the plaintiff who must present evidence that the employer's proffered reason for its action is merely a pretext for discrimination.  Al-Zubaidy v. TEK Indus., 406 F.3d 1030, 1037 (8th Cir. 2005).

### 1.    Whether USPS is a Proper Party

In addition to the Postmaster General, Tedla sued the United States Postal Service.  However the only proper party defendant in an employment discrimination suit against USPS is the Postmaster General.  42 U.S.C. §2000(e)-16; Morgan v. United States Postal Serv., 798 F.2d 1162, 1165 n.3 (8th Cir. 1986) see also Bunda v. Potter, 369 F. Supp. 2d 1039, 1048 (N. D. Iowa 2005).  Therefore, USPS is not a proper party to Tedla's first cause of action for race or

national origin discrimination under Title VII, 42 U.S.C. §2000(e)-16.

Accordingly, USPS is dismissed as a defendant from Tedla's discrimination causes

of action and such claims will be analyzed with Potter as the sole defendant.

### 2.     Prima Facie Case of Race and/or National Origin Discrimination

To establish a prima facie case of race and/or national origin

discrimination, plaintiff must establish that (1) he is a member of a protected

class, (2) he was qualified for the relevant position, (3) he was discharged, and

(4) the discharge occurred under circumstances giving rise to an inference of

discrimination.  Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005).

The parties agree that Tedla has met two elements of the prima facie case

as he is a black Eritrean and was terminated.  However, the parties dispute

whether Tedla satisfies the other two elements, namely, whether he was qualified

and whether the discharge occurred under circumstances giving rise to an

inference of discrimination.

### a.  Whether Tedla was Qualified

Tedla asserts that he was qualified for the casual carrier position because he

passed postal entrance exams and previously enjoyed success as a mail clerk.

Potter responds that Tedla's poor performance demonstrates that he was not

meeting the expectations of his employer.

Viewing all evidence in the light most favorable to Tedla, he has not made a prima facie showing that he was qualified for the position from which he was discharged.  In <u>Erenberg v. Methodist Hospital</u>, 240 F. Supp. 2d 1022, 1031 (D. Minn. 2003), this Court held that the plaintiff was unqualified when she continuously failed to meet the legitimate expectations of the employer despite repeated warnings.

In this case, three of Tedla's supervisors testified that on numerous occasions they spoke to Tedla about his inability to deliver mail on all routes assigned in a timely manner, the necessity for people to assist on Tedla's routes, his failure to scan mail properly, and parking mistakes.

While Tedla produced evidence that he was initially qualified for his position as a clerk, he does not offer any evidence that he performed his job as a mail carrier satisfactorily.  Conversely, Potter has shown that Tedla had to be repeatedly counseled on his lack of timeliness in completing assignments.  The evidence shows that Tedla required 208.5 hours to deliver mail that was expected to take 133.5 hours.  Additionally, numerous supervisors state that they discussed problems with Tedla and Tedla himself admitted that his supervisors "complained" about his performance.

Further, there is no evidence that Potter placed unreasonable or illegitimate expectations upon Tedla.  The casual city carrier job description states that the "functional purpose" of the job was to be "responsible for the prompt and efficient

delivery and collection of mail . . ."  (Tedla Dep. I Ex. 2.)  Accordingly, Potter's

expectations regarding Tedla's timely completion of his routes were legitimate.

Therefore, Tedla was not qualified for the position from which he was discharged

as he did not meet Potter's legitimate performance expectations.

### b.  Whether the Circumstances Give Rise to an Inference of Discrimination

Even if Tedla established he was qualified, he would still have to show that

the discharge occurred under circumstances giving rise to an inference of

discrimination.  Tedla fails to satisfy this prong because the record does not

support any inference that Potter's actions were based on an improper motivation.

A causal connection between the race or national origin of the plaintiff and

the adverse decision must be demonstrated.  Erenberg, 240 F. Supp. 2d at 1031

(citation omitted).  Evidence that similarly situated employees, who are not

African-American or Eritrean, were treated differently can raise an inference of

discrimination.  Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 851 (8th Cir. 2005)

(citation omitted).  However, the plaintiff's "subjective beliefs and bare

allegations" are insufficient to establish such a connection.  Schibursky v. Int'l Bus.

Machs. Corp., 820 F. Supp. 1169, 1176 (D. Minn. 1993).

In this case, Tedla has provided no evidence that other non-Eritrean or non-

African-American employees were treated differently.  From July 2001 through

January 2003, ten other casual carriers were employed at the Elway Postal

Station.  (EEO Rep. 44.)  All ten other casual carriers were white.  (EEO Rep. 45-46.)  Tedla was the only carrier who was fired.  (Tedla Aff. Ex. D.)

Tedla points to two incidents that lead him to believe other carriers were treated differently than he was treated.  First, when Tedla started working at the Elway Postal Station, he met a carrier, Debra Smallman, who was assigned a fixed route.  Smallman quit after three days.  Second, on July 31, 2002, Tedla saw a permanent carrier, "Big Jim," training another permanent carrier, Sheila, to take over his permanent route.  (Tedla Dep. I 39.)

However, Tedla has provided no evidence that these employees were assigned fixed routes, whether these employees were similarly situated casual carriers, or whether they were subjected to the same time expectations as he was. The record reveals that of the other ten casual employees, four quit the job because it was "too hard," two left for other employment, two went back to school and two remain employed for the USPS.  Of the eight casual employees who quit or resigned, seven did so in the first one to three months of employment.

The Court notes that one supervisor did make a comment regarding Tedla's race.  Afternoon supervisor William Jones reported to the USPS EEO investigators that "language and cultural barriers made Goitom Tedla's likelihood for success nearly impossible with the increasing demands being placed on city letter carriers."  (EEO Rep. 16.)  However, Jones was not Tedla's supervisor and had no role in the termination of Tedla.  Moreover, this language does not raise an

inference of improper motive.  Jones's statement does not indicate any cultural bias and does not lead to an inference that the individuals responsible for Tedla's termination were acting upon an improper motivation.

Accordingly, even if Tedla established that he was qualified for his position, he has no evidence of a causal connection between his race or national origin and his termination.  Tedla's subjective belief is insufficient to establish such a connection.  No inference of discrimination is raised since Tedla fails to offer evidence that similarly situated employees, who are not African-American or Eritrean, were treated differently.  Because Tedla has failed to set forth a prima facie case of discrimination, Potter's motion for summary judgment as to these claims is granted.

### 3.    Nondiscriminatory Reason for Discharge

Because Tedla has not stated a prima facie case of race or national origin discrimination, the Court does not need to reach stages two and three of the burden shifting analysis.  The Court employs the following analysis for thoroughness and in an abundance of caution.

After a prima facie case of discrimination has been alleged, the burden shifts to Potter to articulate a nondiscriminatory reason for discharge.  Potter has met this burden.  On August 3, 2002, supervisors Smith and Reuss told Tedla that he was terminated for his low performance after having failed to deliver a route of unsorted mail the previous day.  According to Smith, she discussed the likelihood

of Tedla's termination with supervisors Reuss and Gangl, and spoke with Hanly in a phone conversation a few hours before terminating Tedla.  It is clear from the record that all of the supervisors, both day and evening, were aware of Tedla's overall poor performance.  Thus, Potter has met his burden of articulating a nondiscriminatory reason for Tedla's discharge - his overall poor performance in the timely delivery of mail, failure to scan appropriately and vehicular mistakes.

### 4.   Pretext

Because Potter asserted a nondiscriminatory reason for discharge, the burden shifts back to Tedla to establish that Potter's proffered reason for discharge is a pretext for discrimination.  As evidence of pretext, Tedla contends that other carriers were assigned to routes they had been trained on and given the opportunity to sort and bundle their own mail.  Tedla claims that had he been treated similarly, he would have been able to complete his job in a timely manner.

The record does not support Tedla's assertions.  Tedla has provided no information regarding how long other casual carriers took to complete their routes or whether other casual carriers were expected to deliver unsorted mail in a timely fashion.  Moreover, the individuals that Tedla believes were assigned fixed routes appear to be permanent carriers, not casual carriers like Tedla.

Tedla also argues that Potter's failure to follow USPS procedure in his termination is evidence of pretext.  The Complaint states, "[p]ursuant to the provisions of Sections 365.325 through 365.33 of the Rules of the United States

Postal Service relating to Employment and Placement and Other Personnel Actions, an employee may only be separated/terminated, after prior written notice, and only then by one authorized to take such action.  The separation/termination may not be made retroactive."  (Compl. ¶ 21.) Presumably, Tedla argues that the supervisors who terminated him did not have proper authority and that he was terminated prematurely when his supervisor sent him home.  However, Tedla has not provided the Court with the text of the Rules and Regulations to which he refers and it is impossible to discern whether USPS violated them.  Further, the evidence supports Potter's contention that Tedla was merely sent home on August 3, 2002 and his official termination did not take place until he after he met with Hanly and received the letter dated August 12, 2002.

Tedla has not alleged sufficient facts to place doubt upon Potter's proffered reason for termination.  Tedla was taking significantly longer to deliver the mail than Potter expected.  Tedla fails to present fact issues leading to an inference that Potter's proffered reason was pretextual.  Accordingly, even if the Court had found that Tedla presented a prima facie case, Potter's motion for summary judgment would be granted because Tedla has failed to establish pretext.

**C.     Retaliation**

Subsequent to his termination, Tedla re-applied to the USPS in March 2004. Tedla was denied employment due to his previous termination for unsatisfactory

performance.  Tedla asserts that this subsequent denial of employment was
retaliation for filing a complaint with the EEOC.  (Tedla Aff. ¶ 16.)  Tedla did not
file a grievance with the EEOC relating to this alleged retaliation.  Instead, he
claims he alleged retaliation for the first time in his EEOC appeals proceeding
regarding his original termination.  (Id.)  However, there is no written complaint
of retaliation with the EEOC and the Complaint in this matter does not state a
cause of action for retaliation.  Tedla's only mention of retaliation comes in an
interrogatory and in his affidavit filed in opposition to summary judgment.

### 1.    Failure to Exhaust Administrative Remedies

Tedla's claims of retaliation are dismissed as he has failed to exhaust his
administrative remedies in their pursuit.  The exhaustion of administrative
remedies is a prerequisite to filing a claim of discrimination against a
governmental agency under Title VII.  Brown v. Gen. Serv. Admin., 425 U.S. 820,
832 (1976).  The Eighth Circuit has stated that it will liberally construe an
administrative charge for exhaustion of remedies purposes and recognize that
"there is a difference between liberally reading a claim which lacks specificity, and
inventing, ex nihilo, a claim which simply was not made."  Parisi v. Boeing Co.,
400 F.3d 583, 585 (8th Cir. 2005) (citing Shannon v. Ford Motor Co., 72 F.3d
678, 684 (8th Cir.1996)).  "It is well established that retaliation claims are not
reasonably related to underlying discrimination claims."  Wallin v. Minn. Dept. of
Corrections, 153 F.3d 681, 688 (8th Cir. 1998).

Tedla's claim of retaliation occurred after Tedla's filing of the race and national origin discrimination charge.  Therefore, the complaint investigated by the EEOC never averred retaliation and retaliation was never investigated. Because Tedla's retaliation claim was not included in the original complaint or a separate complaint before the EEOC, Tedla failed to exhaust his administrative remedies and Potter's motion for summary judgment on this claim is granted.

### 2.    Timeliness

Even if Tedla's mention of retaliation during his EEOC appeal constitutes a complaint, this claim must be dismissed as the complaint was not made in a timely manner.

An employee of a federal agency must bring his claim of discrimination to the attention of an EEO counselor for informal counseling "within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a).  Tedla does not dispute that he failed to contact an EEO counselor within 45 days after receiving the April 13, 2004 letter from USPS declining to offer him a position. Tedla instead argues that he was not required to contact a counselor because he mentioned retaliation in the underlying, timely-filed EEO appeal.

The Supreme Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Each discrete discriminatory act starts a new clock or filing charges alleging that act.  Id.

"Discrete acts such as termination . . . or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Id. at 114.  Accordingly, Tedla was required to contact an EEO counselor within 45 days of receiving the April 13, 2002 letter.

Because Tedla failed to file a timely charge, the lawsuit is barred unless he can demonstrate that the limitations period is subject to equitable modification such as waiver, estoppel, or tolling.  Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1327 (8th Cir. 1995) (citations omitted).  Equitable tolling is properly invoked in a case of excusable ignorance where a reasonable person in the plaintiff's situation would not be expected to know of the existence of a possible discrimination violation.  Id. at 1329.  Equitable estoppel applies when a defendant takes active steps to prevent a plaintiff from suing on time.  Id.

Tedla never filed a charge with the EEOC regarding the USPS's failure to rehire him in March 2004.  Therefore, the EEOC never had an opportunity to investigate the charge and Potter never received notice of the allegation.  Neither the doctrine of equitable tolling nor estoppel apply because (1) Tedla admitted he was aware that the refusal to hire could be a violation when he brought it up at the EEOC appeals proceeding and (2) Potter did nothing to actively prevent Tedla from filing a timely charge.  Accordingly, Tedla's claims regarding retaliation are

dismissed as he failed to exhaust administrative remedies and failed to make a timely complaint.

### C.   Breach of Contract

Tedla argues that USPS's Rules of the United States Postal Service relating to Employment and Placement and Other Personnel Actions formed part of a contract of employment between the USPS and Tedla and that Potter's failure to adhere to the Rules when Tedla was terminated constitutes a breach of contract. (Compl. ¶ 20.)

Tedla's breach of contract claims fail because federal district courts have no subject matter jurisdiction to hear breach of contract claims against the United States.  Goodin v. United States Postal Inspection Serv., No. 05-2388, 2006 WL 1007895, at *4 (8th Cir. Mar. 15, 2006).  Instead, Congress has provided for such claims through the Contract Disputes Act ("CDA").  Id.  Employees of USPS must pursue breach of contract remedies through the USPS and can appeal to an agency review board, whose decision can be appealed to the United States Court of Appeals for the Federal Circuit of the United States.  41 U.S.C. §§ 605-607(g)(1)(a).  Alternatively, employees may bring an action directly on the claim in United States Court of Federal Claims.  41 U.S.C. § 609(a)(1).

Pursuant the CDA, this Court has no jurisdiction to hear Tedla's breach of contract claim and Defendants' motion for summary judgment on that claim is granted.

17

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 16] is **GRANTED** and the above-entitled action is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 21, 2006                                    s / Michael J. Davis
                                                        Judge Michael J. Davis
                                                        United States District Court